No. 39,824

WARREN PETROLEUM CORPORATION, *Appellant*, v. THE STATE CORPORATION COMMISSION, *Appellee*. (SUNFLOWER PIPE LINE, INC., *Appellee-Intervenor.*)

(285 P. 2d 777)

Opinion filed July 6, 1955.

*Dale M. Stucky,* of Wichita, and *O. Gordon Oldham,* of Tulsa, Oklahoma, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt,* and *Theodore C. Geisert,* all of Wichita, and *Warren M. Sparks* and *James T. Dolan,* of Tulsa, Oklahoma, were with them on the briefs for the appellant.

*Jay Kyle,* general counsel, of Topeka, argued the cause, and *William E. Stillings,* asst. general counsel, of Topeka, was with him on the briefs for appellee The State Corporation Commission.

*Douglas Gleason,* of Ottawa, argued the cause, and *Dale H. Corley,* of Garden City, and *Thomas E. Gleason,* of Ottawa, were with him on the briefs for the appellee-intervenor Sunflower Pipe Line, Inc.

The opinion of the court was delivered by

HARVEY, C. J.: This is an appeal from a finding and judgment of the district court, which, upon review of an order of the State Corporation Commission, approved a certificate of convenience and authority to the Sunflower Pipe Line, Inc., to transact business as a common carrier by pipe line in the transportation of petroleum products.

On April 20, 1954, the Sunflower Pipe Line, Inc., (Sunflower) a corporation, organized under the laws of this state, with its principal place of business at Garden City, filed with the State Corporation Commission its application for a certificate of convenience and authority to transact business as a common carrier in the state of Kansas for natural gasoline and similar products by pipe line from the Hugoton Gas Field in the counties of Kearny, Grant and Haskell, through the counties of Gray, Ford, Kiowa, Pratt and Kingman, a distance of about 215 miles, to a point immediately east and north of the Derby Refineries in Wichita with pipe-line terminals and connections in Sedgwick, Butler and McPherson Counties, and other points in or beyond said area. It was alleged that there were no other common carrier pipe lines engaged in the business of transporting petroleum products in the area which the applicant desires to serve, and that the applicant proposes to commence construction of such facilities immediately upon obtaining the certificate sought, and further alleged that it would be in the interest of the public that this applicant be authorized to transport petroleum products by pipe line as above set forth, and that the applicant will file and cause to be published specific rates to the point or points involved if the demand arises.

Attached to the application was a copy of the articles of incorporation of the company filed in the Secretary of State's office. The purposes of the company include the activities covered by the application. After due notice and the disposition of preliminary matters, the testimony was taken before the Commission on July 19 and 20, 1954. At this hearing the Warren Petroleum Corporation (Warren) entered its appearance as a protestant, as did the Atchison, Topeka and Santa Fe Railway Company, which is not a party to this appeal.

We shall summarize the evidence before the Commission briefly, as follows: The officers of Sunflower are men of long experience in

the petroleum industry, and especially in laying out and operating pipe lines for the transportation of petroleum products. There is no other pipe-line company engaged in the business of transporting the products by pipe line which Sunflower plans to transport in the Hugoton Field as a common carrier. Practically all of that is done now by Warren who transports the products by tank cars and tank trucks. It has no certificate as a common carrier. It purchases the products under, contract and transports them to places where they can be sold. No one who does not have a contract with Warren can call upon it to transport petroleum products which it desires to sell. Warren has, by ownership or lease, a large number of tank cars and tank trucks. There is an abundance of evidence to the effect that in transporting these products by pipe line there is less waste, less expense in handling, and less danger than in transporting the products by tank cars and tank trucks. There was also evidence by those experienced in financing the construction and operation of the pipe line that the plan outlined by Sunflower for financing its business is practical and can be carried out.

After hearing the evidence and argument of counsel, the Commission took the matter under advisement and on August 11, 1954, made the finding:

"That public convenience will be promoted by authorizing the Sunflower Pipe Line, Inc., of Garden City, Kansas, to transact business as a common carrier in the State of Kansas of Natural Gasoline and similar products, by pipe line from the Hugoton Field in the counties of Kearny, Grant and Haskell to a point immediately east and north of the Derby Refinery at Wichita, Kansas, and that a Certificate should be issued to the Sunflower Pipe Line, Inc., in accordance with the provisions of Section 66-131, General Statutes of Kansas, 1949."

and ordered:

"That the Sunflower Pipe Line, Incorporated, of Garden City, Kansas, be, and it is hereby authorized to transact business as a common carrier in the State of Kansas of Natural Gasoline and similar products by pipe line from the Hugoton Field in the Counties of Kearny, Grant and Haskell to a point immediately east and north of the Derby Refinery, at Wichita, Kansas."

In due time Warren presented its motion for a rehearing before the Commission. This was duly heard and considered by the Commission, and denied. Thereafter, and in due time, Warren presented its petition to the district court of Kingman County for a review of the proceedings before the Commission. By leave of court, counsel for Sunflower intervened in the hearing before the court.

On November 19, 1954, the court filed its memorandum decision, which reads:

"This is an application for review by the Warren Petroleum Corporation of an order entered by the State Corporation Commission on August 11, 1954, in cause docketed as No. 47,330-R, entitled 'In the Matter of the Application of Sunflower Pipeline, Inc., a Corporation, for a Certificate of Convenience and Authority to Transact Business as a Common Carrier in the State of Kansas.'

"I have fully considered the application for review and the certified transcript from the Corporation Commission. The matter has been thoroughly argued by the respective parties and submitted, and in addition thereto I have received a written brief from the applicant for review.

"I am of the opinion and do therefore find that the above entitled order of the Commission is lawful and reasonable and that a judgment should be rendered sustaining said order. Such finding and judgment will be entered in this court as of November 20, 1954."

On November 24, 1954, the Warren Petroleum Corporation filed a motion for a new trial. This was overruled by the court on December 20, 1954. Thereafter the Warren Petroleum Corporation served and filed its notice of appeal to this court.

In this court counsel for appellant present four questions involved. Each of these deals with some different phase of the financing plan of Sunflower. During the hearing before the Commission when questions were asked respecting this matter the chairman of the Commission pointed out that before Sunflower could issue its stocks and bonds it would have to proceed before the Commission under G. S. 1949, 66-125, for authority to issue its stocks and bonds and at that time the Commission would pass upon it and make pertinent orders with respect to the number and amount of stocks and bonds to be issued by Sunflower. No such hearing was then before the Commission.

Counsel for appellant cite several cases ruled upon by the Federal Power Commission in which that Commission apparently considered at the same time the application for a certificate of convenience and necessity, and held up that certificate until it could be shown by the applicant that it had enforceable legal contracts with the parties with whom it would transact business and also showed that it had financial arrangements completed for the construction and management of its transmission line.

Counsel say these practices ought to be followed by the Corporation Commission of this state. We have no occasion to decide whether the state or the federal practice is the more desirable—

perhaps there is some advantage in each. But, the question is one which should be presented to our legislature rather than to the courts.

Counsel for appellant cite and rely heavily on the case, *Re Cimarron Valley Telephone Association, Inc.,* Kansas State Corporation Commission, and reported in 5 PUR. 3d 119. In that case the Cimarron Valley Telephone Association, Inc., on November 25, 1953, filed an application for a certificate of convenience and authority to transact the business of a telephone public utility in parts of Clark and Meade Counties, including the cities of Ashland and Englewood. On the same day the Western Light and Telephone Company, Inc., filed its application for authority to cease operating as a telephone utility its Ashland and Englewood exchanges (having agreed to sell it to Cimarron). On the same day Cimarron Valley filed an application for authority to issue its promissory note to the U. S. government in the amount of $360,000. These applications were consolidated and heard on one common record. After hearing the evidence and considering the matter, the Commission denied all three applications. The case is not in point.

The facts found by the Commission and later examined and approved by the trial court are not controverted in this appeal. The sole contention is that the action of the Commission and the trial court is void as a matter of law. We have examined all the authorities cited by appellant and considered all the arguments made, and find there is no legal infirmity in the proceedings. The judgment of the trial court is affirmed.